IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA TEAGUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-cv-00601 |
| v. ) | |
| ) | |
| HEALTHCARE DEVELOPMENT ) | Hon. Judge Marvin Aspen |
| PARTNERS, LLC and TODD BRYANT, ) | |
| Individually and as agent of HEALTHCARE ) | |
| DEVELOPMENT PARTNERS, LLC, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S LR 56.1 STATEMENT OF MATERIAL UNDISPUTED FACTS

Plaintiff, Joshua Teague, by and through his attorneys, submits the following Statement of Material Undisputed Facts pursuant to Local Rule 56.1(a)(3) in support of his Motion for Summary Judgment on the issue of Defendants' liability on Counts I, IV and V of his Complaint:

## PARTIES AND JURISDICTION

1. Plaintiff is an individual residing in Charlotte, North Carolina who was employed by Defendants from July 3, 2015 through October 13, 2017. Complaint (Dkt. # 1) and Answer (Dkt. # 14), ¶ 1.

2. Defendant, Healthcare Development Partners, LLC, (hereinafter "HDP"), is an Illinois limited liability company engaged in the business of real estate development and property management, which operates its business throughout the United States with its principle place of business in Illinois. Compl. & Ans., ¶ 2.

3. Defendant, Todd Bryant, (hereinafter "Bryant"), is the Managing Member of and an officer and agent of HDP, and resides in Cook County, Illinois. Compl. & Ans., ¶ 3.

4. This Court has jurisdiction over this matter because the parties are domiciled in different states and the amount in dispute exceeds Seventy Five Thousand Dollars ($75,000.00). Compl. & Ans., ¶ 4.

5. The parties have consented to venue in the Northern District of Illinois. Compl. & Ans., ¶ 5.

## DEFENDANTS' ADMISSIONS OF FACT UNDER RULE 36

6. On October 24, 2018, Plaintiff propounded Requests for Admission of Facts ("RFA") pursuant to Rule 36 of the Federal Rules of Civil Procedure separately on each Defendant. See Plaintiff's RFA's to Bryant, Exhibit 1, attached hereto; and Plaintiff's RFA's to HDP, Exhibit 2, attached hereto.

7. On November 23, 2018, Defendants (improperly and deficiently) responded to Plaintiff's Rule 36 Requests for Admission. See Bryant's Answers to RFA's, Exhibit 3, attached hereto; and HDP's Answers to RFA's, Exhibit 4, attached hereto.

8. By letter dated December 5, 2018, undersigned counsel for Plaintiff informed counsel for Defendants that both Defendants' Responses to Plaintiff's RFA's were seriously deficient and noncompliant with Rule 36. See Exhibit 5, attached hereto.

9. Plaintiff provided Defendants with a detailed explanation of each of their deficient responses and improper objections and, pursuant to Local Rule 37.2, offered Defendants an opportunity to amend their deficient Responses. See Pltf's Response to Bryant's Answers to RFA's, Exhibit 6, attached hereto; and Pltf's Response to HDP's Answers to RFA's, Exhibit 7, attached hereto.

10. Defendants have failed to amend their deficient responses. Accordingly, pursuant to Rule 36(a)(6) of the Federal Rules of Civil Procedure, each of the facts specifically identified

in Plaintiff's LR 37.2 Responses to Defendants' Answers to Plaintiff's Requests for Admission (Exs. 6 & 7), have been admitted by Defendants. Exs. 6 & 7.

## THE EMPLOYMENT AGREEMENT AND DEFENDANTS' BREACHES

11. On or about July 3, 2015, Plaintiff entered into an Employment Agreement with Defendant, HDP, setting forth, *inter alia*, his wages, incentive compensation and other terms and conditions of his employment with Defendants. Compl. & Ans., ¶ 6, Ex. A; Teague Decl. ¶ 3.

12. Defendant Bryant negotiated the terms of the Employment Agreement and executed said Agreement on behalf of HDP. Compl. & Ans. ¶ 7, Ex. A; Exs. 1 & 3 ¶¶ 2-3; Ex. 6, p. 1.

13. Bryant is an "Owner" of HDP as that term is used in the Employment Agreement. Compl. Ex. A, p. 10; Exs. 1& 3, ¶ 18; Ex. 6, p. 4.

14. Pursuant to Section 7(b) of the Employment Agreement, Plaintiff was to receive an annual "Base Salary" of One Hundred and Forty Five Thousand Dollars ($145,000), which was to be paid on a bi-monthly basis. Compl. & Ans. ¶ 8, Ex. A, p. 4; Teague Decl., Ex. A, p. 4.[1]

15. Pursuant to Section 7(c) of the Employment Agreement, Plaintiff was to receive annual "Incentive Compensation" in the form of an "Annual Bonus" equivalent to twenty percent (20%) of his base salary, payable on the first pay day in April each year. Compl. Ex. A, p. 4; Teague Decl. Ex. A, p. 4.

16. Section 7(c) of the Employment Agreement further states, "Employee will be eligible for the Annual Bonus, to be reasonably determined by the Owners, and based on eligibility factors and criteria, which will be determined by the Employee and the Owners and

---

[1] The Declaration of Joshua Teague is attached hereto as Exhibit 8. However, it will be referred to throughout this document as "Teague Decl." in order to avoid confusion between the Exhibits attached to the Teague Declaration and the other Exhibits attached directly to this Rule 56.1 Statement of Undisputed Material Facts.

3

attached as Schedule A to this Agreement. It is the intent of the Parties to complete Schedule A at a future date in the calendar year 2015." Compl. Ex. A, p. 4; Teague Decl. Ex. A, p. 4.

17. Pursuant to Section 7(c), Plaintiff made multiple requests/demands for Bryant to complete Schedule A during the calendar year 2015. Teague Decl. ¶ 6; Compl. Ex. C; Exs. 1& 3, ¶ 19; Exs. 2 & 4, ¶ 17; Ex. 6, p. 5; Ex. 7, p. 4.

18. Bryant refused to complete Schedule A during the calendar year 2015, or at any other time throughout Plaintiff's employment with Defendants. Teague Decl. ¶ 7; Compl. Ex. C; Exs. 1 & 3, ¶ 20; Exs. 2& 4, ¶ 18; Ex. 6, p. 5-6; Ex. 7, p. 4-5.

19. Pursuant to Section 7(f) of the Employment Agreement, Plaintiff was entitled to reimbursement for all reasonable out-of-pocket business expenses incurred by him in the course of his employment on behalf of Defendants. Compl. & Ans. ¶ 11, Ex. A, p. 4; Teague Decl. Ex. A, p. 4.

20. Section 9 of the Employment Agreement provides for "Promoted Interest" and states, in pertinent part, "To the extent the Employee provides a direct managerial role in projects where a Promote exists, Employee will receive a percentage of the Promote within the range of 10-35% as mutually determined by the Parties on a cases-by-case basis, provided, however, that Employee's percentage of any Promote related to the Sierra Bloom campus in Phoenix, Arizona is anticipated to be within the range of 5-10% as mutually determined by the Parties." Compl. Ex. A, pp. 4-5; Teague Decl. Ex A, pp. 4-5.

21. In January, 2016, in accordance with Section 9 of the Employment Agreement, Bryant promised Plaintiff a ten percent (10%) ownership stake in the "Winchester Project" in Winchester, Virginia. Teague Decl. ¶ 8; Compl. Ex. A, pp. 4-5; Compl. Ex. C, p. 3.

22. By e-mail dated May 27, 2017, in accordance with Section 9 of the Employment Agreement, Bryant promised Plaintiff a five percent (5%) ownership stake in the Sierra Bloom project in Phoenix, Arizona. Teague Decl. ¶ 9; Compl. Ex. A, pp. 4-5; Compl. Ex. B.

23. In April, 2016, Defendants failed to pay Plaintiff his Annual Bonus for fiscal year 2015-2016. Teague Decl. ¶ 10; Compl. Ex. C.

24. In April 2017, Defendants failed to pay Plaintiff his Annual Bonus for fiscal year 2016-2017. Teague Decl. ¶ 16; Compl. Ex. C.

25. From August 16, 2017 through October 13, 2017, Defendants failed to pay Plaintiff his full bi-monthly Base Salary totaling Seventeen Thousand Eight Hundred and Thirty Nine Dollars and Forty Seven Cents ($17,839.47) in unpaid wages. Teague Decl. ¶ 17; Compl. Ex. C.

26. On October 6, 2017, Plaintiff electronically sent a detailed letter to Bryant stating, *inter alia,*

> This letter is written in an effort to come to a resolution regarding the numerous breaches of my Employment Agreement that have been in existence since as early as December 2015.
>
> I've made numerous attempts over the past two years to address these issues. However, despite multiple attempts to secure compliance with the contract, I've received no cooperation from you. These issues remain outstanding. I'm no longer willing to allow these breaches to continue. Therefore, I must demand a resolution in the form of your honoring the full extent of the Employment Agreement immediately.

Teague Decl. ¶¶ 18-19; Ex. C; Compl. & Ans. ¶ 25, Ex. C.

27. Plaintiff's October 6 letter went on to outline each of Defendants' contractual breaches and underpayments from December 2015 to October 2017. Teague Decl. ¶¶ 18-19, Ex. C; Compl. & Ans. ¶ 25, Ex. C.

28.     Immediately upon receipt of Plaintiff's letter, Bryant responded by e-mail to Plaintiff that same day, October 6, 2017, stating "You just fucked your self (sic)." Teague Decl. ¶ 20, Ex. D; Compl. & Ans. ¶ 26; Compl. Ex. D.

29.     One week later, by letter dated October 13, 2017, Bryant terminated Plaintiff's employment with HDP. Teague Decl. ¶ 21, Ex. E; Compl. & Ans., ¶ 27; Compl. Ex. E.

30.     Prior to receiving Plaintiff's October 6, 2017 letter, Bryant had never indicated to Plaintiff any intent to terminate Plaintiff's employment with HDP. Teague Decl. ¶ 22; Exs. 1 & 3, ¶ 25; Exs. 2 & 4, ¶ 27; Ex. 6, pp. 6-7; Ex. 7, p. 5.

31.     Section 22 of the Employment Agreement states, in pertinent part, "This Agreement may be modified only by a document manually signed both by Employee and the Owners of the Company." Compl. Ex. A, p. 9; Teague Decl. Ex. A, p. 9.

32.     Plaintiff and Defendants never modified the terms of the Employment Agreement by mutually executing a "document manually signed both by Employee and the Owners of the Company." Teague Decl. ¶ 24; Compl. Ex. C.

33.     Plaintiff never agreed to accept anything less than his full "Base Salary" of $145,000 per year at the bi-monthly pay rate of $6,041.67 per pay period. Teague Decl. ¶ 23, Ex. F; Compl. Ex. C.

34.     By e-mail dated November 1, 2017, Margherita Albarello, an attorney representing Defendants with regard to Plaintiff's claims for unpaid wages, acknowledged and admitted that Defendants owed Plaintiff money for unpaid wages and bonuses and promised that Defendants would wire transfer money to Plaintiff's bank account on November 17, 2017. Exs. 1 & 3, ¶ 10; Exs. 2 & 4, ¶ 11; Ex. 6, p. 3; Ex. 7, p. 3.

35. To date, Defendants have failed/refused to pay Plaintiff his unpaid wages from August 16, 2017 through October 13, 2017. Teague Decl. ¶ 26.

36. To date, Defendants have failed/refused to pay Plaintiff his Annual Bonuses for fiscal years 2015-16, 2016-17 and 2017-18. Teague Decl. ¶ 27.

37. To date, Defendants have failed/refused to reimburse Plaintiff for his out-of-pocket expenses incurred in the course of his employment with HDP. Teague Decl. ¶ 25.

38. To date, Defendants have failed/refused to pay Plaintiff the net present value of his Promoted Interest in the Sierra Bloom and Winchester Projects.[2] Teague Decl. ¶ 28.

**Dated: April 19, 2019**

Respectfully submitted,

/s/ *Joshua M. File*
Joshua M. File, an attorney for Plaintiff

Stanley Eisenstein
Joshua M. File
KATZ, FRIEDMAN, EAGLE, EISENSTEIN,
JOHNSON & BARECK, P.C.
77 West Washington Street, 20th Floor
Chicago, Illinois 60602
(312) 263-6330
(312) 372-5555 (fax)
seisenstein@kfeej.com
jfile@kfeej.com

---

[2] At the time of filing Plaintiff's Complaint, the net present value of Plaintiff's 5% ownership interest in the Sierra Bloom Project was valued at approximately $1,871,000.00, and the net present value of Plaintiff's 10% ownership interest in the Winchester Project was valued at approximately $400,000.00. Compl. ¶¶ 14-15.

## **CERTIFICATE OF SERVICE**

   I, the undersigned attorney, certify that on this 19th day of April, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system and that copies of said filing were served on all counsel of record through the Court's CM/ECF system:

                /s/ *Joshua M. File*
                    Joshua M. File